576 A.2d 1076

**Edward L. ASHFORD, Appellant,**

**v.**

**Mary ASHFORD.**

Superior Court of Pennsylvania.

Argued March 27, 1990.

Filed June 15, 1990.

Charles E. Kurowski, Canonsburg, for appellant.

Morley M. Azorsky, California, for appellee.

Before TAMILIA, KELLY and CERCONE, JJ.

TAMILIA, Judge:

This is an appeal from judgment entered October 25, 1989 following the trial court's Order awarding the parties shared custody of their minor child.

■ Appellant/father and appellee/mother Mary Ashford were married on July 27, 1984, but separated in August, 1988, with appellant moving into his parents' home and appellee living apart with Edward, Jr. Appellant filed a complaint on February 10, 1989 for custody of his son, Edward L. Ashford, Jr., born February 19, 1983. Following a child custody conference before a master, who recommended sole custody be given to appellant, the court grant-

ed appellee's request for a trial *de novo*, which was held on September 28, 1989. After trial, the court entered an Order on September 29, 1989 finding the best interest of the child to be in joint custody between appellant and appellee, with each providing approximately equal custody on alternate weeks. The Order was reduced to judgment, and this appeal followed.[1]

On appeal, appellant first argues the trial court erred in refusing to allow the introduction of the transcript of testimony taken at the child custody conference before the master. Appellant sought to introduce the testimony of a private detective and a Cecil Township police officer, both of whom had been examined by counsel for the parties at the custody conference. As a basis for admission of this testimony, appellant relies upon 42 Pa.C.S. § 5934 **Notes of evidence at former trial,** which states in pertinent part:

Whenever any person has been examined as a witness in any civil matter before any tribunal of this Commonwealth or conducted by virtue of its order or direction, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason, and if the party against whom notes of the testimony of such witness are offered, had actual or constructive notice of the examination and an opportunity to be present and examine or cross-examine, properly proven notes of the examination of such witness shall be competent evidence in any civil issue which may exist at the time of his examination, or which may be afterwards formed between the same parties and involving the same subject-matter as that upon which such witness was so examined. . . .

Appellant contends the custody conference constituted a "tribunal of this Commonwealth." We disagree.

---

**1.** We note it is not necessary to reduce a custody Order to judgment as the appeal properly lies directly from the Order. *See* Pa.R.C.P. 1915.-10; Pa.R.A.P. 903(a). In any case the appeal in this case was timely filed.

In reference to the conference, the court stated, "I do not consider that a hearing. That conference is to try to get the parties to resolve their differences without a Court trial." (N.T., 9/28/89, p. 45.) The court elaborated on this position in its Opinion:

The Court rejected this offer on two grounds: (1) the proceedings before the child custody conference officer is [sic] not a proceeding of record pursuant to statute or rule even though on occasion notes of testimony may be taken in order to aid the conference officer in the preparation of a recommendation to the Court; and (2) the mere fact that [appellant] did not either subpoena or arrange in advance to have the witnesses available and could not locate them on the day of the Court trial does not make them "unavailable" pursuant to the statute. (Slip Op., Gilmore, J., 12/1/89, p. 3.)

We agree with the position of the trial court. Appellant has provided no other statutory authority or case law for his argument, nor has this Court been able to discover authority in support of appellant's contention. We do not find transcripts facilitating the role of hearing officers, whose findings and recommendations are not binding until adopted by the court, fall within the intended ambit of section 5934, and therefore this claim is without merit.

 The Act of 1895, June 26, P.L. 316, § 2, 48 P.S. § 92, provides:

### § 92. Judges to decide disputes as to children's custody

In all cases of dispute between the father and mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such minor child shall be committed, and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child. 1895, June 26, P.L. 316, § 2.

There is no subsequent legislation or rule of court which supersedes the above requirement that a judge shall decide, in his sound discretion, to whom an award of custody shall be made. Our position in this respect is reinforced by the Custody Act, 23 Pa.C.S. § 5301 *et seq.*, which makes no change in procedures affecting trial of custody cases. The Divorce Code, 23 P.S. § 304, provides as follows:

§ **304 Hearing by masters**

A master may be appointed by the court to hear testimony on all or some issues, *except issues of custody and paternity. . . .*

(Emphasis added.) The Rules of Civil Procedure promulgated by the Supreme Court for the conduct of custody proceedings contain no indication masters or hearing officers have any authority to conduct hearings or make recommendations to the court. Pa.R.C.P. 1915.1–.25. To the contrary, in the rules governing support hearings, Pa.R.C.P. 1910.1 *et seq.*, specific and detailed provisions are contained in Rules 1910.10 **Alternative Hearing Procedures,** 1910.11 **Office Conference. Subsequent Proceedings. Order,** 1910.12 **Office Conference. Hearing. Record. Exceptions. Order.** These provisions provide for two levels of hearings, one more judicial than the other. In a 1910.12 proceeding, the court may adopt the Order of the permanent hearing officer, after exceptions and argument, without a hearing *de novo,* as would be required under Rule 1910.11.

We are aware that in many, if not most, counties, drawing from the rules and procedural law (cited above) in support cases, counselors or hearing officers have been designated by the courts to review and conciliate custody matters preliminarily, and that the findings resulting from conferences are frequently the basis for entrance of a decree of custody by the trial judge. We do not disapprove of this function as it serves to advance custody proceedings and in most cases provides an acceptable means of resolving a custody dispute more expeditiously and with a saving of judicial time and expense to the court and litigant. The

132

effect is no more than would be the case wherein the parties entered into a custody agreement.

This does not, however, mean that the act of 1895 can be ignored. When a party is not willing to accept the results of the conference proceeding and Order by the court based solely on those proceedings, the parties are entitled to a hearing *de novo*. The hearing *de novo* must be one which requires all matters to be litigated, regardless of their having previously been reviewed at conference, except that where the hearing was conducted before an attorney, designated as a hearing officer by the court, and the witnesses were under oath, with evidence being presented in an orderly fashion and the same degree of formality as other cases heard in this fashion, the court may adopt so much of the proceeding *which remains uncontested* at the time of the *de novo* hearing while requiring additional evidence or proof to resolve contested issues or matters not considered by the hearing officer. In *no case* is the *de novo* procedure to be simply a review for error or a rubber stamp approval of the recommendation of the hearing officer.

Of all cases presented to the courts, none is considered more important than the determination of the custody of children. For this reason, we will always defer to the requirement that the trial judge pass on the testimony and evidence to support findings he believes are sufficient to enable him to exercise his discretion. The trial court may not deny a custody litigant the right of total *de novo* review, as here, should the litigant believe it necessary to have the trial court experience the direct sensory impact of live witnesses and evidence. With such interests at stake, we must err on the side of caution and more extensive review rather than encourage or permit superficial and inadequate procedures. Just as the law has insisted on a broad scope of review in appellate consideration of custody matters, so must the trial judge be permitted broad discretion in determining the adequacy of the trial record. *Lombardo v. Lombardo*, 515 Pa. 139, 527 A.2d 525 (1987); *Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1985).

■ Appellant would have us reverse the trial court because it failed to accept the findings and recommendation of the hearing officer. Despite the fact the hearing officer was administratively designated by the court and the testimony was taken under oath (the record does not disclose whether or not the hearing officer was an attorney), we believe it is discretionary with the trial judge as to whether any findings or recorded statements are admissible. Appellant would have us find the statements of police and a private detective, taken at an earlier hearing under oath, were admissible, pursuant to section 5934, *supra*, because both parties were unavailable at the time of the trial *de novo*. Since we have held above the unique role of the trial judge in custody proceedings requires great sensitivity to his perception of the facts and personalities involved, we cannot preclude him from the right to hear *all* evidence first-hand. We, therefore, need not discuss whether or not the officers were available pursuant to section 5934.

Appellant next argues the environment offered by appellant when compared to that of appellee does not justify a joint custody award, but rather full custody in appellant with partial custody awarded to appellee.

■ In an appeal of a child custody determination made by a trial court, the paramount concern must be the best interest of the child. *Mumma v. Mumma,* 380 Pa.Super. 18, 550 A.2d 1341 (1988). To insure the focus of the trial court was on the best interest of the child, appellate courts operate under a broad standard of review in custody matters; however, we may not reverse the decision of the trial court absent a gross abuse of discretion. *Dolan v. Dolan,* 378 Pa.Super. 321, 548 A.2d 632 (1988).

■ In the instant case, a lengthy *de novo* hearing was held on the issue of whether Edward, Jr.'s interests would be better served by his living with appellant in the home of appellant's parents or continuing to live with appellee. Both parties testified and were cross-examined, as well as appellant's mother and Edward, Jr. himself. While the

custody court had an obligation to consider all relevant factors which could affect the child's well being, we are not concerned with idle gossip or unsubstantiated allegations. *DeNillo v. DeNillo*, 369 Pa.Super. 363, 535 A.2d 200 (1987).

Based upon our review of the trial testimony, we are not prepared to find the trial court's findings constituted a gross abuse of discretion. The testimony of appellant and his mother contradicted that of appellee but was given less weight by the trial court than that of the mother. The court found the mother's home adequate, although her friends were suspect. It found the father's living conditions marginally adequate. (Slip Op., p. 2.) From the testimony and pictures presented on the record, it would be more consistent to have found the father's living conditions to be more desirable. Appellant's major concern is the environment of the child created by appellee's relationships with certain unsavory friends and relatives "with questionable backgrounds and various difficulties with the law" who frequented appellee's home. The trial court found there was "insufficient proof, however, that any of these persons had any influence on or performed any custodial duties in regard to the minor child." (Slip Op., p. 2.) This finding is strongly disputed by appellant, the child witnesses corroborated some of appellant's allegations and appellant claims its police witnesses will further bolster them. While the trial court minimizes the criminal backgrounds of the mother's brothers and friends, we are particularly concerned about the sexual charges pending against her brother, Freeland Matthews (I.D.S.I., Attempted Rape, Statutory Rape, Indecent Exposure). She minimizes his contact and influence as does the trial court, but the constant interaction between the mother and all of the parties with questionable background has not been satisfactorily resolved by the court; even though we cannot, at this point, say a gross abuse of discretion occurred.

Having said this, because of the requirement that all custody hearings be full and comprehensive and all

witnesses be heard who can contribute to that understanding, we believe it was error for the trial court to deny appellant a continuation in order to bring forward the police officer and private detective. The fact that the court opted for "equal" custody and ordered psychological counselling for the parents and child indicates some uncertainty as to which of the parents is best able to nurture the child. In reviewing the evidence and trial transcript, there were numerous disturbing allegations about the maternal associations and environment, and statements by the child (discounted by the court) which corroborated the allegations. Under these circumstances, the court should have permitted the case to be continued to hear and evaluate the two witnesses in order to have a better grasp of the credibility of the parties and truth of the allegations. Also, it would have been desirable for the court to have an independent appraisal of the home environment of both parents to determine whether the child, particularly in sleep, had proper conditions of cleanliness and security. Allegations that he was sleeping on a "stinking" couch, and sometimes on the floor, in the mother's home are disturbing. The mother's allegation of the child sleeping on a couch with his father in the gameroom basement of the paternal grandparents' home is likewise a matter of concern. This could be achieved through a home investigation by the Children and Youth Service or a private agency. We are concerned here because the findings of the trial court are far short of being incontrovertible, and while recognizing certain inadequacies, the trial court's disposition borders on being unreasonable in light of those facts. *See Robinson, supra.*

Shared custody as directed by the court is the most difficult custody to effect without harm to the child. Constant shifting and uprooting of a child between his parents can be traumatic unless the parents are stable and place the child's welfare and interests above their own. This record does not suggest that either parent has the emotional or mental maturity to make such an arrangement work. The court has not provided a sufficient basis upon which to

conclude that shared custody under these circumstances will work or is in the child's best interest. Shared custody would appear to provide the child the worst of both worlds provided by his parents.

We are not prepared to reverse the Order of the trial court but are not of the opinion that the record is adequate to support the trial court's decision or to afford us the opportunity for a proper review.

We, therefore, remand this matter to the trial court for the following actions:

1) To obtain the psychological report on the parents and child;

2) To obtain a home evaluation by an appropriate agency of the homes of both parents; and

3) To permit the introduction on the record of testimony of the police and private detective as requested by appellant.

The case is remanded to the trial court for compliance with this Opinion, which shall be accomplished within 60 days of the date of filing. Upon making findings and conclusions therefrom in support of a custody decree, the case will again be reviewed by this panel.

Panel jurisdiction is retained.

Concurring statement by KELLY, J.

KELLY, Judge, concurring:

I join in Judge Tamilia's cogent opinion in this case. I write separately with respect to the applicable standard of review, for clarification purposes only.

In *Zummo v. Zummo*, 394 Pa.Super. 30, 574 A.2d 1130 (1990) this author summarized the applicable standard of review as follows:

On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record.

On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. *See Karis v. Karis*, 518 Pa. 601, 608, 544 A.2d 1328, 1332 (1988); *Lombardo v. Lombardo*, 515 Pa. 139, 147–48, 527 A.2d 525, 529 (1987); *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 236–37, 478 A.2d 800, 805–06 (1984).

394 Pa.Super. at —, 574 A.2d at 1142.

I find nothing in the majority opinion contrary to that standard. However, as *Karis, Lombardo,* and *Robinson* had expressed narrower constructions of this Courts' "broad" powers of review than this Court had previously followed, I find it appropriate to specifically note that we use the "broad review" characterization consistent with the limitations expressed in those cases.