Michelle M. ZOCCOLE, Appellee,

v.

Patrick M. ZOCCOLE, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 3, 2000.

Filed April 20, 2000.

Matthew D'Emilio, Murrysville, for appellant.

Ruthanne Beighley, Hermitage, for appellee.

Before DEL SOLE, EAKIN and TODD, JJ.

TODD, J.:

¶ 1 Patrick Zoccole (Father) appeals the trial court's order granting Michelle Zoccole (Mother) the right to relocate with the parties' children to her new husband's home twenty-five miles away but within the same county as Father's residence. This case presents the question of whether an intra-county move by a parent who has primary physical custody, which does not involve a modification to an existing custody order, triggers this court's analysis under *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990). For the reasons that follow, we conclude that a *Gruber* analysis is not triggered in this situation and we affirm.

¶ 2 Michelle and Patrick Zoccole separated following eleven years of marriage. The parties ultimately divorced five years later, after protracted and acrimonious litigation. A 1997 custody order granted Mother primary physical custody of the parties' two daughters, Rachel, born August 7, 1988, and Elizabeth, born July 16, 1990. The order granted Father partial physical custody of the girls for approximately the first third of each month, as well as certain enumerated holidays. At that time, the parties lived within less than one mile of each other in Sharpsville, Mercer County. Mother and the girls lived in a small rental property. It is undisputed

that Father remained involved in the lives of his daughters, attending school meetings and sports activities regularly. It is further undisputed that despite a difficult relationship between the parents, they kept their conflicts between themselves and shielded the children well.

¶ 3 After the parties separated, Mother enrolled in and completed a two-year physical therapist assistant program at Penn State University. During this time, she began a relationship with Thomas L. Randall, whom she intended to marry once her divorce from Father was final. Randall lived in Jamestown, also in Mercer County, twenty-five miles from Sharpsville. Mother openly expressed that she and the children planned to move into Randall's residence following her marriage to him.

¶ 4 Following entry of the Divorce Decree in April of 1998, Mother petitioned the trial court for permission to relocate to Randall's residence in Jamestown. Father opposed the Petition, alleging that Mother's request would not be in the best interest of the children and that his contact with them would be negatively impacted by such a move. He further argued that the girls should not be uprooted from their community, friends and school system.

¶ 5 At the hearing on this Petition, Mother testified that she had been working as a physical therapy assistant at Sharon General Hospital, but had secured new, more advantageous private employment in Greenville, near Jamestown. The new position afforded her better hours to accommodate the girls' school schedule. She further testified that Randall was conducting extensive renovations on his residence to accommodate her and the girls.

¶ 6 The trial judge, in granting Mother's petition, suggested a compromise that would continue to afford the children a Catholic education, which was important to both parties, and would prevent a lengthy commute for the children or either parent. He proposed that the girls be enrolled in St. Michael's School in Greenville, located halfway between Sharpsville and Jamestown. In this way, the custody order in effect could remain intact and Father's partial custody would remain undisturbed.[1]

■ ¶ 7 Our scope of review of child custody orders is broad:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Kaneski v. Kaneski,* 413 Pa.Super. 173, 604 A.2d 1075, 1077 (1992) (citing *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845 (1992)).

■ ¶ 8 In any analysis of a change in custody, the paramount concern must be the best interest of the children. The parties, as well as the trial judge, state that the standard to be applied by a trial court in determining under what circumstances a parent who has primary physical custody may relocate with the children was enunciated by this Court in the three-pronged test set forth in *Gruber,* 400 Pa.Super. 174, 583 A.2d 434. Under *Gruber,* we specified the following factors for consideration:

(1) the potential advantages of the proposed move and the likelihood that

---

1. Because neither party has questioned the trial court's authority to make such a directive, this Court will not address that issue.

We note for the record, however, that the girls are now nearing successful completion of their second year at St. Michael's School.

the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

. . .

(2) the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; [and]

. . .

(3) the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Id.* at 439. This test has been widely applied. *See, e.g., Zalenko v. White,* 701 A.2d 227, 228 (Pa.Super.1997); *Kaneski v. Kaneski,* 413 Pa.Super. 173, 604 A.2d 1075, 1077 (1992).

¶ 9 While noting that this case involved an intra-county relocation, the trial court nonetheless applied *Gruber* in approving Mother's proposed move. Appellant argues, citing *Gruber,* that the lower court erred in permitting Mother to relocate a distance of twenty-five miles to Jamestown, despite the fact that the children would remain within the same county and under the jurisdiction of the same trial court. He argues that there will be no distinct and separate advantages to the children from the move, as defined in *Gruber,* and that, in fact, detrimental effects will flow from the relocation. Father lists as such effects the loss of extended family and community, familiar schools, friends and accessibility to him.

¶ 10 We have examined *Gruber* and its progeny to determine whether a *Gruber* analysis is triggered in this case. We note that a pervasive theme throughout the published decisions of this Court relying

on *Gruber* is the desire of the custodial parent to remove the children, *at minimum,* outside the county where the non-custodial parent resides, thereby also removing them from the trial court's jurisdiction. Virtually all of the cases we have examined, with few exceptions, involve a requested relocation out of state. *See, e.g., Anderson v. McVay,* 743 A.2d 472 (Pa.Super.1999) (petition to relocate from Pennsylvania to North Carolina granted); *Baldwin v. Baldwin,* 710 A.2d 610 (Pa.Super.1998) (petition to relocate from Pennsylvania to South Carolina denied); *Zalenko v. White,* 701 A.2d 227 (Pa.Super.1997) (petition to relocate from Wayne County to Bedford County granted); *Kaneski v. Kaneski,* 413 Pa.Super. 173, 604 A.2d 1075 (1992) (petition to enjoin parties from relocating from Pennsylvania to New York denied); *Lambert v. Lambert,* 409 Pa.Super. 552, 598 A.2d 561 (1991) (case remanded for further proceedings regarding petition to relocate from Pennsylvania to Colorado).

¶ 11 Moreover, the language of *Gruber* is clear on this question:

The issue in this case is the standard to be applied by a trial court in determining under what circumstances a parent who has primary physical custody may relocate *outside the jurisdiction of the court.*

*Gruber,* 583 A.2d at 435 (emphasis supplied).

¶ 12 Our review of the case law in this area leads us to conclude that a Gruber analysis is not triggered in the case of a relocation within the same county, when the same trial court would retain jurisdiction over the children. Rather, in such a case, the court's analysis of the request should be based on the best interest of the children on a case-by-case basis.[2]

¶ 13 In the instant case, Mother requested permission to move to a new residence

**2.** Our holding herein does not create a blanket rule that intra-county moves are *per se* permissible. By the same token, we caution

that objections to such moves based on geography, alone, especially when the distance is not substantial, are not to be made lightly.

twenty-five miles away, but within the same county. Admittedly, such a move would require a school change for the children, but it would cause minimal additional upheaval. Moreover, the move would provide notable positive benefits to Mother and to the children. Mother presented uncontroverted testimony that: (1) she planned to marry Randall, a willing future stepfather, who intended to make a home for Mother and her two daughters and was renovating his residence in order to do so; (2) her new employment near Jamestown afforded her the flexibility to spend more time with the girls after school; and (3) she had no intention of altering the custody order in effect or limiting Father's time with the girls in any way.

■ ¶ 14 The trial court found no merit in Father's challenge to Mother's relocation request and further found his challenge to be unreasonable and of questionable motive. Father argues that by virtue of this move, Mother would not *significantly* improve the general quality of life for herself. To the contrary, this Court has every indication that in this particular case, Mother will improve the quality of life for herself and her children by marrying a person with whom she has a loving and committed relationship, who has demonstrated a willingness to undertake an active role as a stepfather to her children. She and the children will improve their living arrangements substantially by moving from a small rented house to a large home which has been outfitted to suit their needs. In addition, she will be able to spend more after-school time with her daughters because of her flexible work schedule. The combination of these factors leads us to hold that the trial court did not abuse its discretion in approving the requested relocation as in the best interest of the children.

■ ¶ 15 We therefore conclude that Mother has established that the proposed move would significantly improve the quality of life for herself and her children. We note that it is fundamental that the best interests of the children cannot be severed from the interests of the custodial parent with whom they live and upon whose emotional and physical well-being they depend. Accordingly, we affirm the trial court's Order granting Mother's Motion for Court's Permission to Relocate.

¶ 16 Order affirmed.

¶ 17 Judge DEL SOLE files a Concurring Opinion.

DEL SOLE, J., concurring:

¶ 1 I join the result reached by the majority but write separately to emphasize that a custodial parent is not required to seek the court's permission prior to relocating.

¶ 2 Unlike some other states, Pennsylvania does not have an "anti-relocation" statute prohibiting a custodial parent from removing a child from the jurisdiction without the permission of the court. *Gancas v. Schultz*, 453 Pa.Super. 324, 683 A.2d 1207 (1996). Rather, the parties are free to live where they choose as long as they notify each other promptly of any change. If the non-custodial parent believes the relocation is not in the child's best interest, the non-custodial parent may, of course, challenge the relocation. *Id.* If the relocation is to another state, the trial court must analyze the move using the factors set forth in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990).

¶ 3 Under our decision today, if the move is within the same county, a *Gruber* analysis is not necessary. Rather the court must use the best interest of the child standard. Where the move is within the same county, the burden should be on the non-custodial parent who is challenging the move to show that the relocation is not in the best interest of the child.

¶ 4 Inter-county moves fall somewhere between these two situations. *Gruber* may be applied where the geographical distance is great, such as a move from Pittsburgh to Philadelphia. However, when the move

is a short distance, as to a contiguous county, *Gruber* should not apply and, again, the parent challenging the move should have the burden to show that the move is not in the child's best interest. The determination of whether to use a *Gruber* analysis should be within the discretion of the trial court.[3] A move to another county may involve nothing more than moving across the street. Under such circumstances, we cannot burden our family courts with the necessity of prior approval of any relocation absent a showing by the non-custodial parent that such a move will negatively affect the parent-child relationship.

---

3. My view is consistent with the few published opinions which deal with the issue of whether *Gruber* should be applied to intercounty relocations. In *Beers v. Beers*, 710 A.2d 1206 (Pa.Super.1998), the first case to squarely decide the issue, the majority opinion stated that the determination of whether to use a *Gruber* analysis must be left to the discretion of the trial court which can then determine whether the geographical distance is significant enough to alter the relationship between the child and the non-custodial parent. *Compare Perrott v. Perrott*, 713 A.2d 666 (Pa.Super.1998) (*Gruber* analysis appropriate in evaluating move from Pittsburgh to Wayne County–King of Prussia area).