J-A23042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C.P.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 726 MDA 2021 |

Appeal from the Decree Entered May 17, 2021
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s):  29-ADOPT-2020

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED:  NOVEMBER 16, 2021**

Appellant, M.R. ("Mother" or "Natural Mother"), files this appeal from

the May 17, 2021, Decree[1] entered in the Franklin County Court of Common

_____

[*] Former Justice specially assigned to the Superior Court.

[1] While the docket reflects that the appeal was filed on May 17, 2021, there is no notation thereon that notice was given and that the Order was entered for purposes of Pa.O.C.R. 4.6(b) (stating, "The clerk shall note in the docket the date when notice was given to the party or to his or her counsel under subparagraph (a) of this Rule."). *See* Note Pa.O.C.R. 4.6 (noting that the Rule is "derived from Pa.R.C.P. No. 236."); *see also Frazier v. City of Philadelphia*, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); *see also* Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)".).  Thus, the Order was not entered, and the appeal period was not triggered.  Although we consider the matter on the merits, we caution the Court of Common Pleas of Franklin County to comply with the rules pertaining to the entry of orders.

Pleas Orphans' Court Division confirming the consent of Mother and terminating her parental rights to her minor, male child, C.P.R., born July 2007 ("Child").[2] The Decree further awarded custody of Child to his maternal grandparents, L.R. and S.R. ("Maternal Grandparents"). After review, we affirm the trial court's Decree.

The trial court summarized the procedural and factual history herein as follows:

> This matter began when [Maternal Grandparents] filed a Petition for Involuntary Termination of Parental Rights (TPR Petition) on August 17, 2020. Therein, [Maternal Grandparents] sought the termination of [Mother's] parental rights. Natural Father was unknown. Due to technical defects in the TPR Petition, the [c]ourt returned it to the Clerk of the Orphans' Court with no action taken. [**See**] Order (August 19, 2020). This Order was served on Natural Mother. [**See**] Order (August 19, 2020).
>
> On August 26, 2020, [Maternal Grandparents] filed a Motion to Supplement Petition for Involuntary Termination of Parental Rights. The [c]ourt appointed counsel for the child and scheduled hearing for September 28, 2020. [**See**] Order of Court (August 27, 2020). Counsel for the Petitioners certified to the [c]ourt service to Natural Mother of the TPR Petition, Notice from the Court, the Act 101 Notice, and Consent to Adoption form. [**See**] Affidavit of Service, filed September 17, 2020. [Maternal Grandparents] filed a second Affidavit of Service that same date evidencing service of the Order of Court scheduling hearing on the TPR Petition.
>
> On or about September 18, 2020, the [c]ourt received an undated letter (Letter) from Natural Mother in chambers. [**See**] Letter, filed September 21, 2020. The [c]ourt forwarded the [l]etter to the Clerk of the Orphans' Court to be filed and served on all

---

[2] By Decree dated April 9, 2021, the court terminated the parental rights of Unknown Father. Unknown Father has neither filed an appeal nor participated in the instant appeal.

- 2 -

parties. [*See*] Order (September 21, 2020). In addition, and on the [c]ourt's own motion, the [c]ourt appointed counsel to represent Natural Mother.[3] [*See*] Order (September 21, 2020), ¶ 2.

On September 24, 2020, [Maternal Grandparents] filed a Motion for Participation by Video; therein, they requested that Natural Mother be permitted to appear at the September 28, 2020, hearing by advanced communication technology from [a] State Correctional Institut[ion].[4] On September 25, 2020, [Maternal Grandparents] filed a Petition to Waive Notice to Unknown Father. The [c]ourt granted relief as to both the Motion and waiver petition. [*See*] Orders of Court (September 28, 2020).

On September 25, 2020, Counsel for Natural Mother filed a Motion to Continue Hearing on Involuntary Termination of Parental Rights. The [c]ourt granted the Motion and rescheduled the hearing for December 18, 2020. [*See*] Order of Court (September 28, 2020). However, the hearing was ultimately continued generally as a result of the President Judge's declaration of judicial emergency. [*See*] Order (December 10, 2020).

On January 11, 2021, [Maternal Grandparents] filed a Petition for Confirmation of Consent; therein, [Maternal Grandparents] requested that the [c]ourt confirm Natural Mother's consent to the termination of her parental rights and subsequent adoption. The [c]ourt scheduled hearings for February 19, 2021. [*See*] Order of Court (January 22, 2021). On January 29, 2021, Natural

---

[3] Notably, pursuant to contact with counsel for Maternal Grandparents, Mother executed a Consent to Adoption on September 23, 2020. Notes of Testimony ("N.T."), 4/9/21, at 16-17; *see also* Consent to Adoption, 9/23/20. This Consent noted Mother's consent to Child's adoption and her intent to relinquish parental rights. Consent to Adoption, 9/23/20. It is uncontroverted that neither Mother nor opposing counsel was aware that counsel had been appointed at the time Mother executed the Consent. N.T. at 5-8, 11, 28, 42-43 (". . .[T]he evidence is uncontroverted that neither [Mother] nor [counsel for Maternal Grandparents] would have been aware or were aware of the [c]ourt's appointment of counsel. . . ."). We observe that counsel for Maternal Grandparents stated that a copy of the Consent was forwarded to counsel for Mother following receipt of notice of his appointment. *Id.* at 7.

[4] At all times relevant hereto, Mother has been incarcerated at SCI-Cambridge Springs.

Mother filed a Motion to Continue this hearing; the [c]ourt granted the continuance until April 9, 2021. [**See**] Order of Court (February 4, 2021).

On March 24, 2021, Natural Mother filed a Praecipe to Revoke Consent (Praecipe). The hearing on the Petition for Confirmation of Consent occurred as scheduled on April 9, 2021. Natural Mother appeared via advanced communication technology and through appointed counsel. She testified in opposition to the Petition for Confirmation of Consent. After hearing Natural Mother's testimony,[5] . . . [t]he [c]ourt took the Petition for Confirmation of Consent under advisement and directed briefing from the parties.[6], [7] [**See**] Order of Court (April 9, 2021). The parties timely complied. [**See**] Brief Filed on Behalf of [Mother] (Mother's Brief), filed April 29, 2021, Brief in Support of Petition to Confirm Consent to Adoption ([Maternal Grandparents'] Brief), filed April 30, 2021, and Brief in Support of Confirmation of

---

[5] In addition to Mother's testimony, Exhibits 7, 14, and 15 were admitted without objection as evidence by Maternal Grandparents. N.T. at 13, 18, 25-26, 41-42.

[6] At the outset of the hearing, Mother moved to dismiss the Petition for Confirmation of Consent asserting that it was provided while she was represented by counsel and obtained through communication with opposing counsel. **Id.** at 4-5. Mother argued:

> Your Honor, before the [c]ourt takes evidence, [Mother] would request that the [c]ourt dismiss the petition based on the fact that her consent was given while she was represented by an attorney and the communication, with no imputation of ill conduct on the part of opposing counsel, but the consent was obtained via communication through opposing counsel with [Mother] while [Mother] was represented by counsel[,] and that the communication did not go through her attorney and[,] therefore, the consent was offered through inappropriate, but not intentional, conduct on the part of opposing counsel. . . .

**Id.**

[7] As indicated **supra**, by Decree dated April 9, 2021, the court terminated the parental rights of Unknown Father. Decree, 4/9/21.

- 4 -

Consent, filed April 30, 2021 (Child's Brief).[8]  On May 17, 2021, this court entered a Decree confirming Natural Mother's consent to the adoption and terminating her parental rights.  [**See**] Decree (May 17, 2021).  Natural Mother filed the instant Notice of Appeal on June 3, 2021.[9]

Trial Court Opinion, ("T.C.O."), 6/22/21, at 1-4 (footnotes omitted).

On appeal, Mother raises the following issues for our review:

1) Was the hearing held on April 9, 2021, not properly before the [c]ourt on said date, due to [Maternal Grandparents'] failure to comply with notice requirements?

2) Was the consent signed by [Mother] ineffective since it was signed pursuant to ex[]parte communication with her by opposing counsel, when [Mother] was represented at said time[?]

3) Was the consent signed by [Mother] ineffective since it was signed only upon the condition that an agreement be reached granting her continuing contact with the subject child[?]

Mother's Brief at 4 (suggested answers omitted).

"We review a revocation of consent to adoption in relation to a voluntary relinquishment of parental rights for an abuse of discretion or legal error.  We must determine whether the record is free from legal error and the court's factual findings are supported by the evidence."  **In re R.I.**, 172 A.3d 665, 666-67 (Pa.Super. 2017) (internal citations omitted).

---

[8] Counsel for Child filed a brief on behalf of Child in support of confirmation of Mother's consent.  Counsel for Child further filed a brief with this Court in support of the trial court's decree confirming said consent and terminating Mother's parental rights.

[9] Concurrent with her notice of appeal, Mother additionally filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

The Adoption Act provides two alternative procedures by which a parent may relinquish his or her parental rights voluntarily. A parent may file a petition to relinquish his or her parental rights pursuant to Section 2501 of the Adoption Act, which provides as follows:

> **(a) Petition.**--When any child under the age of 18 years has been in the care of an agency for a minimum period of three days or, whether or not the agency has the physical care of the child, the agency has received a written notice of the present intent to transfer to it custody of the child, executed by the parent, the parent or parents of the child may petition the court for permission to relinquish forever all parental rights and duties with respect to their child.
>
> **(b) Consents.**--The written consent of a parent or guardian of a petitioner who has not reached 18 years of age shall not be required. The consent of the agency to accept custody of the child until such time as the child is adopted shall be required.

23 Pa.C.S.A. § 2501.[10]

Additionally, a parent may sign a consent to his or her child's adoption, and an agency or adoptive parent may file a petition to confirm that consent. This procedure is set forth at Section 2504 which states, in relevant part:

> **(a) Petition to confirm consent to adoption.--**If the parent or parents of the child have executed consents to an adoption, upon petition by the intermediary or, where there is no intermediary, by the adoptive parent, the court shall hold a hearing for the purpose of confirming a consent to an adoption upon expiration of the time periods under [S]ection 2711 (relating to consents necessary to adoption). The original consent or consents to the adoption shall be attached to the petition.

---

[10] 23 Pa.C.S.A. § 2502 is similar to § 2501 except it provides for voluntary relinquishment to an adult intending to adopt the child.

**(b) Hearing.--**Upon presentation of a petition filed pursuant to this section, the court shall fix a time for a hearing which shall not be less than ten days after filing of the petition. Notice of the hearing shall be by personal service or by registered mail or by such other means as the court may require upon the consenter and shall be in the form provided in [S]ection 2513(b) (relating to hearing). Notice of the hearing shall be given to the other parent or parents, to the putative father whose parental rights could be terminated pursuant to subsection (c) and to the parents or guardian of a consenting parent who has not reached 18 years of age. The notice shall state that the consenting parent's or putative father's rights may be terminated as a result of the hearing. After hearing, which shall be private, the court may enter a decree of termination of parental rights in the case of a relinquishment to an adult or a decree of termination of parental rights and duties, including the obligation of support, in the case of a relinquishment to an agency.

. . .

23 Pa.C.S.A. § 2504(a)-(b).

The relevant time periods for the Section 2504 procedure, as well as the requirements that a consent must meet in order to be valid, are established by Section 2711. Of particular relevance to these appeals, Section 2711(c)(1)(i) provides that a consent will become irrevocable if a parent does not revoke it within thirty days of its execution, while Section 2711(c)(3)(i)(A) provides that a parent may challenge the validity of a consent by filing a petition alleging fraud or duress within sixty days of its execution:

**(c) Validity of consent.--**. . . . A consent to an adoption may only be revoked as set forth in this subsection. The revocation of a consent shall be in writing and shall be served upon the agency or adult to whom the child was relinquished. The following apply:

(1) Except as otherwise provided in paragraph (3):

. . .

(ii) For a consent to an adoption executed by a birth mother, the consent is irrevocable more than 30 days after the execution of the consent.

. . .

(2) An individual may not waive the revocation period under paragraph (1).

(3) Notwithstanding paragraph (1), the following apply:

(i) An individual who executed a consent to an adoption may challenge the validity of the consent only by filing a petition alleging fraud or duress within the earlier of the following time frames:

(A) Sixty days after the birth of the child or the execution of the consent, whichever occurs later.

(B) Thirty days after the entry of the adoption decree.

(ii) A consent to an adoption may be invalidated only if the alleged fraud or duress under subparagraph (i) is proven by:

(A) a preponderance of the evidence in the case of consent by a person 21 years of age or younger; or

(B) clear and convincing evidence in all other cases.

**(d) Contents of consent.—**

(1) The consent of a parent of an adoptee under 18 years of age shall set forth the name, age and marital

status of the parent, the relationship of the consenter to the child, the name of the other parent or parents of the child and the following:

I hereby voluntarily and unconditionally consent to the adoption of the above named child.

I understand that by signing this consent I indicate my intent to permanently give up all rights to this child.

I understand such child will be placed for adoption.

I understand I may revoke this consent to permanently give up all rights to this child by placing the revocation in writing and serving it upon the agency or adult to whom the child was relinquished.

If I am the birth father or putative father of the child, I understand that this consent to an adoption is irrevocable unless I revoke it within 30 days after either the birth of the child or my execution of the consent, whichever occurs later, by delivering a written revocation to (insert the name and address of the agency coordinating the adoption) or (insert the name and address of an attorney who represents the individual relinquishing parental rights or prospective adoptive parent of the child) or (insert the court of the county in which the voluntary relinquishment form was or will be filed).

If I am the birth mother of the child, I understand that this consent to an adoption is irrevocable unless I revoke it within 30 days after executing it by delivering a written revocation to (insert the name and address of the agency coordinating the adoption) or (insert the

name and address of an attorney who represents the individual relinquishing parental rights or prospective adoptive parent of the child) or (insert the court of the county in which the voluntary relinquishment form was or will be filed).

I have read and understand the above and I am signing it as a free and voluntary act.

(2) The consent shall include the date and place of its execution and names and addresses and signatures of at least two persons who witnessed its execution and their relationship to the consenter. The consent of an incarcerated parent of an adoptee may be witnessed by a correctional facility employee designated by the correctional facility. Any consent witnessed by a correctional facility employee shall list the address of the correctional facility on the consent.

(3) In lieu of two witnesses a consent may be acknowledged before a notary public.

23 Pa.C.S.A. § 2711(c)-(d).

23 Pa.C.S.A. § 2712 further provides:

A consent to a proposed adoption meeting all the requirements of this part but which does not name or otherwise identify the adopting parent or parents shall be valid if it contains a statement that it is voluntarily executed without disclosure of the name or other identification of the adopting parent or parents.

23 Pa.C.S.A. § 2712.

This Court has stated that the trial court may not proceed to consider the merits of a revocation of a consent if such revocation is untimely. *In re Adoption of J.A.S.*, 939 A.2d 403, 408–09 (Pa.Super. 2007). In finding that a trial court had erred and improperly dismissed a father's petition for voluntary relinquishment due to an oral revocation more than thirty days after

execution, this Court acknowledged, "[t]his Court has held that 'the statute renders a consent to adoption irrevocable more than thirty (30) days after execution,' and the unambiguous language of the statute requires a trial court to consider the timeliness of a petition to revoke before it considers the merits of such a petition. [*Id.*]."[11] *In re R.l.*, 172 A.3d at 666–67.

Importantly, the Pennsylvania Supreme Court recently clarified the Section 2504 procedure in *In re J.W.B.*, ___ Pa. ___, 232 A.3d 689 (2020). Therein, the Court explained that the purpose of a hearing to confirm a parent's consent is not merely to determine whether he or she has attempted to revoke a consent or challenge its validity within the relevant time periods. Rather, the trial court also must "review the consents and consider any and all arguments raised by the parties challenging their conformity with the Adoption Act." *See id.* at 700. The Court observed, for example, that Section 2711(d) "includes an exhaustive list of the information that must be included in the consent document," and explained that a parent may challenge the absence of such information in the consent even after the relevant time periods expire. *See id.* at 701 ( stating "[t]he specific provisions of [Section] 2711, including in particular the time limitations for revocation or a validity challenge based upon fraud or duress, are premised on the execution of a consent that complies with the legislature's statutory requirements.").

---

[11] In *R.l.*, the father attempted to revoke his consent orally, seventy-two days after execution of a petition for voluntary relinquishment.

Initially, the trial court indicates that it had been constrained in addressing Mother's appeal because she did not request the April 9, 2021, hearing transcript which is necessary for appellate review. T.C.O. at 5; *see* Pa.R.A.P. 1911(a) (requiring an appellant to "request any transcript required under this chapter in the matter and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 5000.1 *et seq.* of the Pennsylvania Rules of Judicial Administration (court reporters)."); *see also Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa.Super. 2006) (*en banc*) ("When the appellant . . . fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for purposes of appellate review. . . ."). However, this omission has been rectified, for on June 30, 2021, Mother requested the notes of testimony from the April 9, 2021, hearing, and they are contained in both the certified record and reproduced record.

In her first issue presented on appeal, Mother argues the hearing pertaining to confirmation of her consent was not properly before the trial court. Mother's Brief at 9. Mother asserts, "[t]he record is clear that no hearing was ever scheduled to 'confirm the consent' of [Mother], nor was [Mother] or her counsel served with said notice proceeding." *Id.* In support of her position, Mother relies upon *In the Matter of the Adoption of K.G.M., et al.*, 845 A.2d 861 (Pa.Super. 2004), wherein the court vacated a consent due to faulty service. *Id.*

In determining that confirmation of Mother's consent was properly before the court and appropriately noticed, the trial court stated:

On January 11, 2021, [Maternal Grandparents] filed a Petition for Confirmation of Consent. The [c]ourt scheduled a hearing for February 19, 2021, in light of the [c]ourt's review of both the TPR Petition and Petition for Confirmation of Consent. [*See*] Order of Court (January 22, 2021).[12] Natural Mother filed a Motion to Continue the hearing, describing it as a "hearing on the involuntary termination of [Natural Mother's] Parental Rights." [*See*] Motion to Continue, filed January 29, 2021. The [c]ourt continued "the hearing on the Petition for Involuntary Termination of Parental Rights" to April 9, 2021. [*See*] Order of Court (February 4, 2021). Natural Mother filed the Praecipe on March 24, 2021, and the hearing occurred on April 9, 2021. The [c]ourt subsequently entered a Decree confirming Natural Mother's consent to the adoption. [*See*] Decree (May 17, 2021).

Based on this procedural history, the hearing to confirm Natural Mother's consent was properly before the [c]ourt. Natural Mother has previously argued the phrase "hearing on the petition for involuntary termination of parental rights" indicates the hearing on April 9, 2021, was a hearing on the TPR Petition only, rendering the [c]ourt's subsequent entry of a Decree confirming Natural Mother's consent improper. However, the [c]ourt originally scheduled the hearing in light of the [c]ourt's review of both the TPR Petition and the Petition for Confirmation of Consent. The

---

[12] This order provided:

And now, this 22nd day of January 2021, the Petition to Confirm Consent of Mother having been filed Jan. 11, 2021[,] and Petition for Involuntary Termination of Parental Rights filed August 17, 2020 and amended September 1, 2020[,] having been presented in Chambers, read, considered and ordered filed, Friday the 19th days of February, 2021, at 9:00 o'clock am., prevailing time, in the assigned Court Room of the Franklin County Courthouse, Chambersburg, Franklin County, Pennsylvania, is fixed as the time of hearing which will be held by advanced communication technology.

Order, 1/22/21.

"hearing on the petition for involuntary termination of parental rights" language does not change that the original hearing was scheduled on both petitions and merely continued; the nature of the hearing never changed. Natural Mother's counsel was served with notice of the hearing under 23 Pa.C.S.A. § 2721. [*See*] Order of Court (February 4, 2021).

T.C.O. at 6-7.

To the extent Mother argues that she did not receive notice of a hearing on the petition to confirm Mother's consent, she should have raised any objections in this regard at the time of trial; therefore, they are now untimely. Thus, we find this issue waived. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *see also Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa.Super. 1995) (stating, "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations omitted); *see also Bednarek v. Velazquez*, 830 A.2d 1267, 1270 (Pa.Super. 2003).

Even if this issue were not waived, we would find it lacks merit. For the reasons the trial court stated, Mother's argument she did not receive notice of a hearing on the petition to confirm her consent is not supported by the record. *See* Order, 1/22/21; *see also* Order, 2/5/21. As such, Mother's claim is meritless.

In her second issue, Mother contends her consent was not operative as it was signed pursuant to ex parte communication with opposing counsel when she was represented by counsel. Mother's Brief at 10. Mother maintains:

[Mother] testified in [c]ourt that if she was aware of the fact that she had an attorney at the time each of the above occurred, she would have sought said counsel's advice before making the decision as to whether to sign the documentation. [Mother] further testified that she believed that by signing the documentation she would still be able to see her child, a belief that her attorney would have been able to accurately educate her about. [Mother] confirmed at the hearing that she was not presently offering her consent.

*Id.* at 9-10. In support of her position that her consent was not effective, Mother baldly references three federal cases wherein information was excluded when counsel obtained it through ex parte contact. *Id.* at 10.

However, in finding confirmation of Mother's consent effective, the trial court reasoned:

The [c]ourt could not reach the merits of Natural Mother's challenge to the consent because her challenge was untimely. Even if Natural Mother could have shown fraud or duress, based on her execution of the consent without knowing she was represented by counsel, her challenge was foreclosed by the statutory time limits. For these reasons, Natural Mother's consent was effective despite the ex parte communication with opposing counsel while she was represented.

It is also noteworthy that counsel never filed a petition seeking to revoke his client's consent, or otherwise raise a claim that the attorney-client relationship was invaded by [Maternal Grandparents]. Counsel for Natural Mother was aware as early as January 8, 2021, that his client had executed written consent to the adoption. [*See*] Petition for Confirmation of Consent, filed January 8, 2021, with accompanying Certificate of Service. Yet, counsel did not raise a challenge to the consent until March 24, 2021, when the Praecipe to Revoke Consent was filed.

- 15 -

> Further, Natural Mother never invoked her right to counsel. Out of abundance of caution, this court appointed counsel on its own motion. [*See*] Order (September 21, 2020), ¶ 2. Natural Mother now claims her right to counsel was violated in circumstances where she never asserted that right.

T.C.O. at 10-11.

We agree that, for the reasons stated by the trial court, this claim lacks merit. Significantly, Mother did not file a praecipe with respect to revocation of consent until six months after initially executing her consent and almost two months after Maternal Grandparents filed to confirm said consent. This was beyond the statutory limits at which time Mother's consent was irrevocable. Furthermore, Mother has failed to otherwise offer either through counsel or *pro se* any articulation of her revocation of or challenge to her consent.

In her third issue, Mother posits that her consent was not applicable because her signature was contingent upon a post-adoption contact agreement. Mother's Brief at 11. Mother claims, "[i]t is clear from the record, both documentary and testimonial, that [Mother's] consent was issued conditionally. In exchange for her consent[,] she required continuing contact with her son." *Id.* Relying on *In re C.M.C.*, 140 A.3d 699 (Pa.Super. 2016), Mother indicates that the trial court should not be able to find an intelligent, voluntary, and deliberate consent to termination of parental rights. *Id.*

In determining that confirmation of Mother's consent was nonetheless effective, the trial court stated:

> A parent does not "intelligently, voluntarily, and deliberately" consent to the termination of her parental rights when her execution of a consent is conditioned on a post-adoption contact agreement. [*See In re C.M.C.*], 140 A.3d 699, 711 (Pa.Super. 2016). However, the only evidence of such an agreement in the present case is Natural Mother's [l]etter stating she would decline to "contest" the termination of her parental rights if [Maternal Grandparents] would agree to certain terms providing post-adoption contact between Natural Mother and the child. Natural Mother provided this [l]etter to the [c]ourt only; the [c]ourt forwarded the [l]etter to be filed and served on all parties, including [Maternal Grandparents]. [*See*] Order (September 21, 2020). This is not sufficient to show a post[-]adoption contact agreement existed between Natural Mother and [Maternal Grandparents].
>
> Further, Natural Mother signed the consent without such an agreement in place, demonstrating her consent was not contingent upon a post-adoption contact agreement. . . . For these reasons, Natural Mother's consent was effective because there is insufficient evidence to show Natural Mother's written consent was contingent upon a post-adoption contact agreement.

T.C.O. at 11-12.

Once again, we agree with the trial court's analysis, and for the reasons it states, we find this claim also lacks merit.

Accordingly, we conclude the trial court appropriately confirmed Mother's consent for adoption and terminated her parental rights to C.P.R. As the trial court held, "Natural Mother did not revoke her consent in accordance with the law. Consequently, there was no valid reason for the [c]ourt to reject her consent to the termination of her parental rights and adoption of the subject child." T.C.O. at 12.

Decree affirmed.

- 17 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2021