J-S30016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1090 EDA 2022 |

Appeal from the Decree Entered March 31, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000041-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: J.E.T., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1091 EDA 2022 |

Appeal from the Decree Entered March 31, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000042-2021

BEFORE: STABILE, J., McCAFFERY, J., and PELLEGRINI, J.*

MEMORANDUM BY McCAFFERY, J.:            **FILED NOVEMBER 9, 2022**

Appellant, J.W. ("Father"), files these consolidated appeals from the decrees dated and entered March 31, 2022, in the Philadelphia County Court of Common Pleas, granting the petitions of the Philadelphia Department of Human Services ("DHS") to involuntarily terminate his parental rights to his

_____

* Retired Senior Judge assigned to the Superior Court.

twin children, J.M.T. and J.E.T., Jr., born in July 2010 (collectively, "the Children").[1] After review, we affirm the trial court's decrees.

The Children became known to DHS in November 2013 due to a valid General Protective Services ("GPS") report regarding Father's physical abuse of the Children. N.T., 3/31/22, at 8-9; DHS Exhibit 3. In related child custody litigation between Father and Mother, that same month DHS received a referral reflecting a request by the court for a safety assessment. DHS Exhibit 4. The referral indicated that the Children resided with Father at the time. *Id.* The Children were not adjudicated dependent and were not placed in DHS custody. DHS Exhibit 11.

Subsequently, in March 2015, Mother had primary custody of the Children, and was living with Maternal Grandmother. After a report of physical abuse by Maternal Grandmother, the Children were committed to DHS and placed in care. In June 2015, the Children were placed with Father, where they remained.[2] DHS Exhibits 5 and 11; N.T., 3/31/22, at 70-71. The court adjudicated the Children not dependent and returned legal and physical custody to Father in September 2015. DHS Exhibit 11.

_____

[1] By orders dated and entered March 31, 2022, the court held the termination petitions in abeyance as to the Children's mother, S.T. ("Mother"). Continuance Order, 3/31/22; *see also* N.T., 3/31/22, at 113. The certified record does not reveal the ultimate disposition as to Mother.

[2] While another valid GPS report was received in 2016 regarding physical abuse by Father, the Children remained with Father. *See* DHS Exhibits 6 and 11.

Of relevance, on March 30, 2018, DHS then received an indicated Child Protective Services ("CPS") report of physical abuse with respect to J.E.T., Jr. and against Father. N.T., 3/31/22, at 10-11; DHS Exhibit 7. The report stated that Father assaulted J.E.T., Jr., in the street leaving J.E.T., Jr., with a bloody nose, "an abrasion under [his] right eye, discoloration and a bump [on] his forehead." DHS Exhibit 7. Father allegedly struck J.E.T., Jr., with his fist and had earlier hit him with a broomstick and a belt. *Id.* Father, however, testified that J.E.T., Jr., had "one of his usual tantrums" and "fell on the ground." N.T., 3/31/22, at 73. After Orders of Protective Custody ("OPC") of the same date, the Children were removed from Father and committed to DHS. DHS Exhibits 10. The Children have remained placed and in DHS custody since March 30, 2018.[3] DHS Exhibit 11.

The trial court ultimately adjudicated the Children dependent on October 10, 2018, and established a placement goal of return to parent or guardian.[4] DHS Exhibit 11. In support thereof, after the initial entry of a stay away order, the court awarded Father supervised visitation with J.M.T. However, as to J.E.T., Jr., upon the lifting of the stay away order, the court suspended visitation pending therapeutic recommendation. *Id.* Likewise, court-ordered

---

[3] After initial placement with family, J.M.T. was placed in general foster care and J.E.T., Jr. was placed in a psychiatric hospital and then a residential treatment facility. At the time of the termination hearing, both were placed in general foster care. DHS Exhibit 11.

[4] Additional indicated reports were received in May 2018 and November 2018, related to physical abuse of J.E.T., Jr., by an uncle, and sexual abuse of J.E.T., Jr., by Father, respectively. DHS Exhibits 8 and 9.

requirements and single case plan objectives were instituted. N.T., 3/31/22, at 11; *see* DHS Exhibit 11. Notably, at the time of adjudication, the court ordered Father be referred to or for the following: anger management; PAN ("Parent Action Network"); BHS ("Behavioral Health Services") for consultation and/or evaluation; and family functional therapy. DHS Exhibit 11.

Thereafter, over the next four years, the court conducted regular review hearings. The court maintained the Children's commitment and placement goals throughout these proceedings. While the court noted moderate compliance with the permanency plan in August 2020, by August 2021, the court characterized Father's compliance as minimal and recognized minimal progress toward alleviating the circumstances necessitating placement. DHS Exhibit 11.

On January 27, 2021, DHS filed petitions for the termination of parental rights and goal change. After numerous continuances, the court held a hearing on the petitions on March 31, 2022.[5] Father was present and represented by counsel. DHS presented the testimony of Community Umbrella Agency ("CUA"), Turning Points for Children, case manager, Tiffany Wilson; and Dr. William Russell, forensic psychologist, who conducted a

---

[5] We observe that the notes of testimony of the proceedings reflect a five-minute gap in the audio of this hearing. N.T., 3/31/22, at 104-05.

parenting capacity evaluation ("PCE") of Father in November 2019.[6] Legal counsel for the Children presented the testimony of Roya Paylor,[7] social worker. Additionally, Father testified on his own behalf.[8] The Children, who were eleven years old at the time of the hearing, were represented by legal counsel (also referred to as a "child advocate") as well as separate guardians *ad litem* ("GAL").[9]

At the conclusion of the hearing, the court announced its decision to terminate Father's parental rights to the Children.[10] N.T., 3/31/22, at 109-13. By separate decrees entered March 31, 2022, the court memorialized this

---

[6] The parties stipulated to Dr. Russell being an expert in forensic evaluation, specifically, parenting capacity evaluation. *Id.* at 45. His report, dated November 16, 2019, is marked and admitted as DHS Exhibit 2.

[7] DHS indicates that this name is misspelled in the notes of testimony and is, in fact, Roya Paller. DHS's Brief at 47 n.9.

[8] In addition to this testimony, DHS presented DHS Exhibits 1 through 13, which were marked and admitted without objection. N.T., 3/31/22, at 61-62. Father had been prohibited from presenting any evidence other than his own testimony for failure to comply with discovery deadlines. *Id.* at 77-79. Nonetheless, the court permitted Father to present Exhibit P-1, which was marked and admitted over objection, as he had provided same in accordance to said deadlines. *Id.* at 83-84, 90-92.

[9] Legal counsel argued in favor of termination of Father's parental rights. *Id.* at 108-09.

[10] At that time, as noted, the termination petitions were held in abeyance as to Mother, and the court then proceeded with a permanency review hearing. N.T., 3/31/22, at 113-14. The certified record does not disclose the ultimate disposition as to the termination of Mother's parental rights or the goal change petitions.

determination. Thereafter, on April 22, 2022, Father, through counsel,[11] filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court *sua sponte* consolidated Father's appeals on May 23, 2022.[12]

On appeal, Father raises the following issues for our review:

1. The [trial court] erroneously found that there was clear and convincing evidence to terminate [Father]'s parental rights under [23 Pa.C.S. § 2511(a)(1)], because [Father] had not evidenced a settled purpose of relinquishing claim to the [Children] or failed or refused to perform his parental duties by conduct continuing for a period of at least six months preceding the filing of the petition.

2. The [trial court] erroneously found that there was clear and convincing evidence to terminate [Father]'s parental rights under [23 Pa.C.S. § 2511(a)(2)], because there was a lack of clear and convincing evidence that [Father] was incapacitated, had abused or neglected his child[ren], and/or refused to parent his child[ren], so as to leave [his children] without essential parental care, control or subsistence necessary for the[ir] physical or mental well-being[ ]; and any of the aforementioned alleged conditions had or could be remedied by [Father]. In fact, [Father] had no dependency issues, and reunification could occur immediately.

3. The [trial court] erroneously found that there was clear and convincing evidence to terminate [Father]'s parental rights under [23 Pa.C.S. § 2511(a)(5)] because there was a lack of clear and convincing evidence that there were any dependency issues for [Father] that precluded him from properly parenting the [Children], and there were no conditions that prevented immediate reunification; any alleged issues that the [trial court] believed precluded immediate reunification, could be resolved in

---

[11] We note that Father is represented by new counsel on appeal.

[12] On June 1, 2022, the trial court filed a Notice of Compliance with Rule of Appellate Procedure 1925(a), in which it references its reasoning placed on the record.

a reasonable period of time, because [Father] was compliant with his objectives for reunification.

4. The [trial court] erroneously found that there was clear and convincing evidence to terminate [Father]'s parental rights under [23 Pa.C.S. § 2511(a)(8)], because there was a lack of evidence that [Father] had any dependency issues that prevented him from immediate reunification, nor had there historically been any such issues.

5. The [trial court] erroneously found that there was clear and convincing evidence to terminate [Father]'s parental rights under [23 Pa.C.S. § 2511(b)] because it was not in the [Children]'s best interest to have [the] parent-child relationship with [Father] forever terminated, because the two shared a long and substantial bond that was in the child[ren]'s bests interests, which should not have been severed — this bond endured despite the [Children] being withheld from [Father] after [being] placed in foster care over [Father]'s objection.

6. The [trial court] failed to properly analyze the evidence or allow it to be presented that proved that [Father] had a good and substantial bond with his child[ren] that should not have been severed by the termination of his parental rights.

7. The [trial court] denied [Father] due process by limiting his ability to admit evidence proving that he had complied with his objectives and proving that he also had a good and substantial bond with the [Children] that should not have been severed.

8. The [trial court] denied [Father] due process by making erroneous evidentiary rulings, and arbitrarily favoring the Department of Human Services and the Child Advocate of evidentiary rulings and limitations on [Father]'s relevant evidence, denying [Father a] full and fair hearing.

Father's Brief at 4-5.[13]

_____

[13] We find that Father's claims related to due process set forth in his seventh and eighth issues would be waived for failure to address this issue in a meaningful way with citation to legal authority in his brief. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any

*(Footnote Continued Next Page)*

Preliminarily, we observe that Father's brief does not comport with the

Pennsylvania Rules of Appellate Procedure, as argued by DHS. DHS asserts,

> Father has waived his appeal by filing a brief with significant deficiencies that preclude meaningful appellate review. His brief does not comply with the Rules of Appellate Procedure since it contains eight questions presented for review, a one-paragraph statement of the case, and an argument that is divided into six parts that do not align with the any of the questions presented for review and is not developed with citation to relevant facts and legal authority.

DHS's Brief at 15; *see also id.* at 17-26.

Specifically, Pa.R.A.P. 2117(a) requires the statement of the case to

contain, in part, the following:

> (1) A statement of the form of action, followed by a brief procedural history of the case.
>
> *    *    *
>
> (4) A closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to

---

discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *see also In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017) (citations omitted) (explaining this Court will not review an appellant's claim unless it is included in both the concise statement of errors complained of on appeal and statement of questions involved, and developed in his or her argument and supported by citation to relevant legal authority). Nevertheless, even if not waived, as Father participated in the hearing and was represented by counsel, who had the opportunity to present, and did present, evidence, and cross-examined witnesses on Father's behalf, any related challenge to due process fails. *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005) ("Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter.").

determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found. . . .

Pa.R.A.P. 2117(a)(1), (4). Here, Father provides a mere one paragraph statement that fails to include all facts necessary for determination of the matter in controversy with reference to their location in the record. *See* Pa.R.A.P. 2117(a)(4).

To the extent Father includes a subsection entitled "Summary of the Evidence and Court Decision" within the argument section of his brief, this also falls short as it spans 36 pages and is, therefore, not condensed. *See* Pa.R.A.P. 2117(a)(4). Further, it is rife with argument and commentary and fails to address where and how issues were preserved below. *See* Pa.R.A.P. 2117(b) ("The statement of the case shall not contain any argument. It is the responsibility of appellant to present in the statement of the case a balanced presentation of the history of the proceedings and the respective contentions of the parties."); *see also* Pa.R.A.P. 2117(c)(1)-(4) (statement of the case shall specify the proceeding in which a claim was preserved as well as the method in which they were raised, the court's ruling, and relevant citations to the record).

Moreover, as to the argument section of his brief, organizationally, although Father offers headings and points of separation, these do not comport directly with his statement of questions involved and do not serve to confine his argument. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the

head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Rather, Father engages in a rambling, unfocused commentary not guided or driven by his issues raised and unmoored from the applicable law. Notably, Father does not reach his actual argument until page 64. While Father includes a subsection, "Legal Standards," that includes the generic law regarding termination of parental rights,[14] the two subsections where he actually analyzes the termination of his parental rights are largely devoid of relevant citation to authorities with application to the relevant facts. Further, Father fails to clearly identify where and how in the record he raised the issues in question before the trial court. *See* Pa.R.A.P. 2119(e) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information.).

Pa.R.A.P. 2101 underscores the seriousness with which this Court takes deviations from procedural rules, as it permits us to quash or dismiss an

---

[14] The certified record does not reflect that the Children's permanency goals were changed, nor does Father appeal from any such purported orders. Therefore, to the extent that Father sets forth law pertinent to goal change orders, it is not relevant.

- 10 -

appeal for procedural noncompliance. *See* Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."). Given these multiple deficiencies in Father's brief, we conclude that Father has waived any issues challenging the decrees terminating his parental rights. *See In re D.R.-W.*, 227 A.3d 905, 911 (Pa. Super. 2020) ("Given the lack of discussion and citation to relevant legal authority, we find that Father has waived any issues relating to error on the part of the trial court as it relates to 23 Pa.C.S. § 2511.").

Notwithstanding, even if we were to review the termination of Father's parental rights, we would conclude that the record supports the trial court's termination of Father's parental rights.

We review involuntary termination orders for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may

- 11 -

not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021). An appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id***. at 587.

Termination of parental rights is governed by Section 2511 of the Adoption Act. If the trial court determines the petitioner established grounds for termination under subsection 2511(a) by clear and convincing evidence, then the court must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004). Here, we analyze the court's termination decrees pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or

- 12 -

> subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

With regard to termination of parental rights pursuant to Section 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.[ ] § 2511(a)(2), the following three elements must be met:  (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).  "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021) (quoting *In re*

*C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (internal citation omitted)). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *In re Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017) (quoting *In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011)). As such, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re S.C.*, 247 A.3d at 1105 (quoting *In re Z.P.*, 994 A.2d at 1118).

Instantly, in finding grounds for termination of Father's parental rights pursuant to Section 2511(a)(2), the trial court first noted Father's failure to complete single case plan objectives, which were re-ordered, as well as recommendations set forth in the PCE. N.T., 3/31/22, at 110. The court further emphasized Father's lack of recognition of the conditions that led to the Children's placement. The court stated, "[T]here was no acknowledgment by [F]ather as to the circumstances which resulted in the [C]hildren being placed into care, specifically the abuse and neglect. There's been no attempt to remedy that situation because there's been no acknowledgement of it by [F]ather." *Id.* at 110-11.

Father, however, argues that the record is devoid of evidence demonstrating incapacity, abuse, or neglect. Father's Brief at 66, 68. He emphasizes the lack of "admissible, non-hearsay evidence." *Id.* at 66. Regardless, Father asserts that he was "totally (or at least) substantially

- 14 -

compliant with his objectives."[15] *Id.* He blames any shortcomings on CUA's failure to make appropriate referrals. *Id.* at 66-67. He further contends that he was "not required to admit abuse" and that his second parenting program addressed his role in the Children's situation. *Id.* at 67.

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2). The record reveals that Father failed to complete his goals aimed at reunification. CUA case manager, Tiffany Wilson, recounted that Father's objectives included: attend ARC for parenting and anger management; obtain a CBH assessment; continue supervised visits with J.M.T.; comply with CUA case management and court-ordered services; complete PCE and follow recommendations; and obtain and maintain stable housing and employment. N.T., 3/31/22, at 11. Ms. Wilson further made clear that Father was aware of these goals and/or objectives which remained the same throughout the case. *Id.* at 12. She acknowledged that Father had completed some of these objectives. *Id.* Father completed ARC for parenting in May 2019, and anger management in September 2019. *Id.* at 13, 40, 44. However, Ms. Wilson testified that the court re-ordered parenting in 2020, and Father did not re-engage. *Id.* at 13, 44. She further expressed remaining

---

[15] Father attaches numerous exhibits to his brief as Appendix B, which we do not review. Significantly, this Court may only consider that which is in the certified record. *See Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*).

parenting concerns.[16]   *Id.* at 13.   The court likewise re-ordered anger management in 2019, and 2021, which was not completed.  *Id.* at 17, 44. Ms. Wilson confirmed that Father also completed a PCE.   *Id.* at 14. Notwithstanding, the PCE recommended domestic violence counseling, as well as individual therapy.  *Id.* at 14, 16; DHS Exhibit 2 at 7.  Notably, this therapy was to address the allegations of physical abuse.  N.T., 3/31/22, at 18.  As such, she referred Father to Menergy in the summer of 2020.  Father was discharged in October 2020 because he "would not admit to his part in domestic violence and abuse." *Id.* at 14.  While the court re-ordered domestic violence counseling in 2020, and again in 2021, Ms. Wilson testified that this was not completed.  *Id.* at 15.  As of August 2021, almost two years after the PCE, Father commenced individual therapy.  *Id.*  Ms. Wilson stated that Father failed to address the allegations of abuse and failed to complete this recommendation.  *Id.* at 17-18.  Ms. Wilson additionally testified that Father has not consistently complied with CUA services.  *Id.* at 19.  She confirmed that he was "not cooperative and nonresponsive to CUA[ ] outreach[.]" *Id.* at 26.

---

[16] Ms. Wilson noted Father's anger, as well as "his lack of concern for the welfare of both of the children and their emotional and mental and behavioral needs."  N.T., 3/31/22, at 13-14.

As to visitation, Father's visitation with J.M.T. remained supervised.[17] N.T., 3/31/22, at 22. Notably, J.M.T. declined in-person visits and then declined virtual visits. *Id.* at 22-23. Father's last visit with J.M.T. was a virtual visit that occurred in May/June 2021. *Id.* at 23, 25. Ms. Wilson testified that J.M.T. no longer wishes to have contact or visits with Father. *Id.* at 24-25. Further, as to J.E.T., Jr., Father's visitation remained suspended pending therapeutic recommendation. *Id.* at 21. Ms. Wilson indicated that visitation was never deemed appropriate by a therapist or the court and that J.E.T., Jr., does not want visits. *Id.* As such, recognizing a lack of accountability and insight for the reasons the Children came into care and his role therein, and continuing safety concerns, Ms. Wilson acknowledged Father's inability to provide for the Children's safety and permanency. *Id.* at 25, 27-28, 37-38.

Moreover, Dr. Russell similarly opined that Father lacks the ability to provide safety and permanency for the Children. N.T., 3/31/22, at 51-52; DHS Exhibit 2 at 6. Dr. Russell testified, "I felt that at the time I saw him, he needed to address a number of issues before he could provide a safe environment for either of his children or both of them." *Id.* at 50. He indicated that Father lacked insight into the reasons the Children came into care and his role in their coming into care. *See id.* at 51-52. Dr. Russell continued, "Based on the statements of the caseworker, the issues that I

---

[17] On cross-examination by the GAL for J.M.T., Ms. Wilson confirmed that Father's visitation with J.M.T. was suspended for a period of time due to him kicking her during a visit. *Id.* at 35.

pointed out in the summary as well as those recommendation[s] that I made appear to continue to exist today." *Id.* at 50.

Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for his physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. *See id*. As we discern no abuse of discretion, we do not disturb the trial court's findings.

To the extent Father raises evidentiary issues, such as hearsay, and lack of authentication or foundation, such issues are waived for failure to address and develop them in the argument section of his brief in a meaningful way with citation to legal authority. *See In re W.H.*, 25 A.3d at 339 n.3 (Pa. Super. 2011); *see also In re M.Z.T.M.W.*, 163 A.3d at 465-66.

Further, such evidentiary issues would additionally be waived for failure to raise them before the trial court. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *see also Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa. Super. 1995) (stating, "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations

omitted); *see also Bednarek v. Velazquez*, 830 A.2d 1267, 1270 (Pa. Super. 2003). Notably, although Father raised three evidentiary objections throughout Ms. Wilson's testimony, these were resolved in his favor and/or were not of the nature suggested here and alluded to throughout his brief. N.T., 3/31/22, at 15, 24, 30-31. He raised no objection during Dr. Russell's testimony. Further, Father likewise failed to object to the admission of any of DHS's exhibits, including the GPS and CPS referrals, and Dr. Russell's PCE. *Id.* at 61-62.

Moreover, to the extent Father asserts a lack of reasonable efforts on the part of DHS, this argument is without merit. When reviewing a termination decree on appeal, courts are not required to consider reasonable efforts provided to a parent. *See In the Interest of: D.C.D.*, 105 A.3d 662, 672 (Pa. 2014) (concluding, "Neither subsection (a) nor (b) requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights." Although the Court recognized "the provision or absence of reasonable efforts may be relevant to a court's consideration of both the grounds for termination and the best interests of the child[,]" it held that the provision of reasonable efforts is not a requirement for termination.).

We next determine whether termination was proper under Section 2511(b). As to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love,

- 19 -

> comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted). Nevertheless, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *T.S.M.*, 71 A.3d at 267. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Moreover,

[w]hile a parent's emotional bond with his or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Instantly, in determining that termination would serve the Children's needs and welfare pursuant to Section (b), the trial court determined that a bond between Father and the Children did not exist. N.T., 3/31/22, at 112. The court continued, "I find that there would be no irreparable harm as a result of the involuntary termination of rights. . . . It's clear to this [c]ourt that these children do not wish to see their father." *Id.* at 112-13. Notably, the court found the photographs introduced by Father as Exhibit P-1 as irrelevant. *Id.* at 112.

Father, however, argues that the trial court abused its discretion in addressing Section 2511(b) as there was "no basis for termination due to full compliance" under Section 2511(a). Father's Brief at 69. He further contends that his parental rights could not be terminated as Mother's parental rights were not terminated. *Id.* at 69-70. In the alternative, Father asserts that there was a lack of evidence to support a finding pursuant to subsection (b). Father notes no inquiry of the Children, no bonding evaluation, and no evidence relating to visitation or therapist consultation. *Id.* at 70.

- 21 -

We first recognize that the termination of Father's parental rights is not dependent upon the termination of Mother's parental rights. Father's parental rights may be terminated and are not required to be preserved simply because the parental rights of Mother were being preserved. Our Supreme Court expressly rejected this proposition in *In re Burns*, 379 A.2d 535, 541 (Pa. 1977) ("Nothing in the Adoption Act requires that an agency, which has assumed custody of a child, must establish grounds for the involuntary termination of both parents, before it can obtain such a decree as to either."). While *Burns* was decided under a prior version of the Adoption Act, nothing in the current Act contradicts the Court's decision. *See In re C.W.U., Jr.*, 33 A.3d 1 (Pa. Super. 2011); *see also In re E.M.*, 908 A.2d 297, 299 n.1, 309 (Pa. Super. 2006) (vacating the order terminating the mother's parental rights even though the father's parental rights were terminated and he did not appeal).

Further, as discussed *supra*, we discern no abuse of discretion by the trial court in finding grounds for termination of Father's parental rights pursuant to Section 2511(a)(2). Thus, the trial court appropriately analyzed Section 2511(b). *See In re T.S.M.*, 71 A.3d at 267 (reiterating that Section 2511 provides that involuntary termination requires a bifurcated analysis, and a court can only move to Section 2511(b) if it finds 2511(a) is proven); *see also In re Adoption of G.L.L.*, 124 A.3d 344, 345 n.2 (Pa. Super. 2015) ("Only *after* determining that the parent's conduct warrants termination of his or her parental rights under section 2511(a) must the court engage in the

second part of the analysis, determination of the needs and welfare of the child, under section 2511(b).") (citation omitted) (emphasis in original).

As stated, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. "Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Upon review, the evidence supports termination of Father's parental rights pursuant to Section 2511(b). Ms. Wilson testified that no beneficial parent-child bond exists between Father and the Children. N.T., 3/31/22, at 33, 34, 36. She stated that the Children do not wish to reunify with Father or have visits. *Id.* at 30, 33. This was confirmed by social worker, Roya Paylor, who indicated that the Children's feelings and desires in this regard were "strong" and "adamant." *Id.* at 101-04. Rather, the Children share a primary parental relationship with their respective foster parents. *Id.* at 32, 34, 36. As such, Ms. Wilson opined that there would be no irreparable harm if the relationship is severed, and that termination of Father's parental rights is in the Children's best interests. *Id.* at 33-34. Therefore, the trial court did not abuse its discretion in determining that termination serves the Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

While Father may profess to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. The Children, now twelve years old and

in care for over four years, are entitled to permanency and stability. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

Lastly, to the extent Father asserts bias on the part of the trial court,[18] this issue would be waived for failure to raise it in both his concise statement and the statement of questions presented, as well as for failure to raise it below before the trial court. *See In re W.H.*, 25 A.3d at 339 n.3; *see also In re M.Z.T.M.W.*, 163 A.3d at 465-66; *see also* Pa.R.A.P. 302(a); *see also Fillmore v. Hill*, 665 A.2d at 515-16; *see also Bednarek v. Velazquez*, 830 A.2d at 1270.

Accordingly, based on the foregoing, we affirm the decrees terminating Father's parental rights.

Decrees affirmed.

---

[18] Father avers bias related to the trial court's evidentiary rulings as a whole, including those within Father's case-in-chief, stating, "These heavy-handed rulings evidenced potential bias and partiality to [F]ather's great detriment." Father's Brief at 70-72.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/09/2022